[No. 17854.  Department Two.  October 5, 1923.]

## C. A. MAUK LUMBER COMPANY, *Appellant,* v. MILLER BROTHERS LUMBER COMPANY, *Respondent.*[1]

SALES (69, 70)—PERFORMANCE OF CONTRACT—DELIVERY—ASSIGNMENT OF BILL OF LADING.  Where the seller of a car load of shingles, consigned to itself, sold the same as a car in transit, delivering the bill of lading, when in fact the car had reached its destination, had been delivered to the consignor without surrender of the bill of lading, and had been unloaded and the shingles placed in storage and a warehouse receipt issued to the consignor therefor, there is a failure of consideration entitling the purchaser to recover the full price paid, notwithstanding the cost of reloading, storage and forwarding would have been but $71, and notwithstanding the purchaser may have had a right of action against the railroad company for a wrongful delivery or against the warehouse company for recovery of the property (PEMBERTON, J., dissents).

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered October 4, 1922, upon findings favorable to the defendant, in an action on contract, tried to the court.  Reversed.

*Alexander, Bundy & Swale,* for appellant.
*S. M. Bruce,* for respondent.

FULLERTON, J.—The appellant and respondent are severally wholesale dealers in lumber and shingles, the appellant operating at Seattle and the respondent at Bellingham.  Sometime in the early part of March, 1920, the respondent purchased from another dealer a car load of shingles which were shipped from Gale, Washington, and which were then enroute consigned to the Minnesota transfer station in the state of Minnesota.  On March 8, 1920, the respondent surrendered the original bill of lading to the railway company issuing it and took another consigning the freight to itself, care of W. M. Lalor, at the same destination.

[1]Reported in 219 Pac. 28.

The car had been started on its way on February 16, and reached the transfer station on March 16, 1920. Lalor, in whose care the car had been consigned, immediately on its arrival wired the respondent of the fact of its arrival and inquired what disposition the respondent wished made of it. The respondent wired in reply to place the car in storage. Lalor thereupon caused the car to be unloaded, and the shingles stored with the Minnesota Transfer & Storage Company at St. Paul, Minnesota. The shingles were stored in the name of the respondent subject to its order and a warehouse receipt taken from the storage company to that effect, which receipt was forwarded to the respondent.

On April 3, 1920, in a telephone conversation between the respective managers of the parties, the respondent informed the appellant that it had a car load of shingles for sale, giving the contents of the car, its destination, and the price at which the shingles could be purchased. The price was satisfactory to the appellant and it agreed to purchase the shingles. On the same day the respondent made an invoice of the shingles, attached thereto the bill of lading before mentioned and a draft for the purchase price and forwarded them to a bank at Seattle. The appellant on the next day paid the draft to the bank and took up the invoice and the bill of lading. In the conversation between the managers, before stated, the appellant was not told that the car had then reached its destination, had been unloaded, the shingles stored and a warehouse receipt issued for them, nor did the respondent forward to the appellant the warehouse receipt.

The appellant purchased the shingles believing that they were still in transit, intending to divert them to

another destination, namely, Toledo, Ohio. The rail-
way companies then allowed but one such diversion;
that is to say, but one such diversion at a through rate.
If the car had been diverted once, the local rate was
charged from the point of its first diversion to the sec-
ond. After receiving the bill of lading from the bank,
the appellant discovered that it was issued in lieu of
another which had been assigned to the respondent.
It thereupon wrote to the respondent, calling its at-
tention to this fact, saying that it required the privi-
lege of one diversion, and that, if the car had been
once diverted, it would have to ask the respondent to
stand the additional freight rate. It requested the re-
spondent, if there had been a misunderstanding, to
telephone it promptly on the receipt of the letter, other-
wise it would proceed with a reconsignment. To this
letter the respondent answered, saying with reference
to the car in question:

"NYC 259040 was not diverted. It was billed to
Minn. Transfer and we received exchange bill of lad-
ing placing it in care of W. M. Lalor; no diversion was
made."

It did not, however, say that the car had reached
its destination, that the shingles had been stored in a
warehouse in its name, and that it then held the ware-
house receipt for the shingles.

On the receipt of this letter, the appellant went to
the office of the railway company at Seattle and di-
rected that the car be forwarded to its own order at
Toledo, Ohio, and instructions to that effect were im-
mediately forwarded to the railway agent at the Minne-
sota transfer. Later on the appellant learned that
the car had not arrived at the Ohio destination and
he called upon the railway to locate it. On July 31,
1920, he was informed that the car had reached the

Minnesota transfer, and that the shingles had been stored as before stated.

The appellant thereupon began the present action to recover the amount paid for the shingles. After issue joined, a trial was had before the court sitting without a jury. From the facts appearing, the court concluded that the appellant was entitled to recover only the additional charges it would have been put to had it taken the shingles from storage with the storage company at St. Paul and shipped them to their intended destination at Toledo, Ohio. These additional charges it found to be $71.03, and entered a judgment in favor of the appellant for that sum. It is from this judgment that the present appeal is prosecuted.

The trial court held, as we have before indicated, that title to, and right of possession of, the shingles passed to the appellant by the delivery to it of the bill of lading, and concluded therefrom that, since it had such title and right of possession, all that it lost by the respondent's misrepresentation of the then situation of the property was the additional cost the appellant would have been put to by a reshipment of it from its then location to the place he desired to consign it. But we think this a mistaken view of the situation. At the time of the transfer of the bill of lading, that instrument did not represent the title to the property. The property had then been carried to the designation the respondent had directed it to be carried, had been delivered to the respondent, who was then entitled to receive it, had been stored by respondent, and a storage receipt had been taken for it. The symbolical representation of the title was thereafter the storage receipt, not the bill of lading, and possession of the latter instrument, without more, did not entitle the possessor to the property as against the warehouse

company who held the property in storage.    Manifestly, therefore, the delivery of the bill of lading was not a delivery of the property, either symbolical or actual.

It may be that, under the state and Federal bills of lading acts, the appellant, by its purchase of the bill of lading, acquired a right of action against the railway company as for a wrongful delivery of the property; that is, a delivery without the surrender of the bill of lading.    It may be also that it could, in some form of action in which the respondent was made a party, have recovered the property from the storage company.    But rights of action of these sorts were not what the respondent represented it was selling to the appellant.    It, in effect, if not in words, represented that it was selling a car load of shingles in the possession of a carrier, and this was what it knew the appellant intended to purchase and thought it was purchasing, and it is not a compliance with such a contract to deliver it an instrument which at best conferred on it a mere right of action.

We have not overlooked the testimony of the appellant's manager to the effect that, by some peculiar custom prevailing at the Minnesota transfer, an assignment of a bill of lading issued by a carrier was recognized as a transfer of goods in storage, and that the assignment would have been accepted by the storage company as such a transfer in this instance.    But there is evidence to the contrary by other witnesses equally credible, and much more in accord with ordinary business principles.

It is not here denied, of course, that an assignment of a bill of lading would operate as an assignment of the title to property under the circumstances shown here had the carrier retained the right of possession

of the property, even though it had stored the property with this same storage company. But these are not the facts as presented by the record. The carrier delivered the property to the rightful consignee, and the consignee stored the property to its own account, not to the account of the railway company.

These considerations, it seems to us, can lead to but one conclusion. The appellant did not receive what the respondent purported to sell it, and did not receive what it desired to purchase, or what the respondent led it to believe it was purchasing. There was thus a failure of consideration for the purchase money, and the appellant is entitled to recover it, with interest from the time of its payment.

The judgment appealed from is reversed, and the cause is remanded with instructions to enter a judgment in favor of the appellant in accordance with this conclusion.

MAIN, C. J., TOLMAN, and PARKER, JJ., concur.

PEMBERTON, J., dissents.