[No. 18919.    Department Two.    March 3, 1925.]

Nelson S. Pratt *et al.*, *Respondents*, v. Alfred F. Thompson *et al.*, *Appellants*.[1]

Limitation of Actions (56)—Form of Action—Fraud—Discovery. An action for damages for deceit and false representations in the sale of land is an action for fraud, and is not barred by the statute of limitations until three years after discovery of the fraud.

Same (57)—Discovery of Fraud—Diligence. The purchaser of land which was supposed to include certain springs near the boundary line cannot be charged with want of diligence in not discovering for three years that the springs were not within the boundaries of the tract, where the grantor had occupied the land six years and always supposed that the springs were on the tract and so represented them.

Vendor and Purchaser (24)—Fraud—Knowledge or Intent. A vendor's false representation as to a material fact is actionable although made through an honest mistake.

Same (186)—Remedies of Vendee—Damages. Misrepresentations as to the inclusion of springs within the boundaries of a tract of land held, under the evidence, not to warrant a finding of damages in excess of $1,000.

Appeal from a judgment of the superior court for Lewis county, Hewen, J., entered February 25, 1924, upon findings in favor of the plaintiffs, in an action for fraud, tried to the court. Reversed.

*Gus L. Thacker* and *Hayden, Langhorne & Metzger,* for appellants.

*Hull & Murray,* for respondents.

Holcomb, J.—This is an action for damages upon the ground of fraud in the sale of real estate, and for the abatement of the purchase money notes and mortgage in the amount of the damage found. Appellants deny the material allegations of the complaint and set up two affirmative defenses—laches and the statute of

[1]Reported in 233 Pac. 637.

limitations. The trial judge found damages in favor of respondents in the sum of $2,000 and costs, and gave judgment abating the purchase money note and mortgage against the appellants in that sum. The undisputed facts may be summarized as follows:

In May, 1920, respondents approached appellants themselves and negotiated for the purchase of the tract of land, consisting of two forty-acre tracts lying side by side, and a strip seven rods in depth adjoining the forty-acre tracts on the south, containing about five acres. The purchase price was $12,000, of which $4,500 was paid at the time of the transfer, and the balance secured by a mortgage on the lands conveyed. The controversy wages over the representations as to the location and quality of a spring, so-called, which later proved to be not a spring, but a mere pool in the creek which arose outside of the lands in question and flowed down to, and almost coincident with, the south boundary line of the five-acre tract for a distance, and then turned into the main tract. It later developed that there was no spring there, but that the pool consisted of water seeping into the bed of this continuously flowing stream, and appellants, who owned the land for six years before selling to respondents, always honestly believed the so-called springs to be springs, and their predecessors had bought the five-acre tract of land for the purpose of owning the spring or source of water supply. The pool and the stream, for some distance above it, had a high, steep bank on one side and was somewhat hidden by brush, trees and logs. Evidently both appellants and their predecessors believed the water supply to be springs. It cannot be doubted that appellants represented to respondents when viewing the land that the water supply consisted of a spring or springs. Neither can it be doubted that appellants always believed that the source of the water supply,

the so-called springs, was upon the five-acre tract which had been purchased for the sole purpose of owning this water supply and controlling it, by their predecessors.

About February, 1923, Mr. Pratt, one of the respondents, went up above the source of the water supply about 150 feet on adjoining land and made a small dam in the course of the stream. When this was done it was discovered that the spring went dry, or nearly dry. He also discovered that the pool of water or spring was not located on the five-acre tract, or on any of the land purchased from appellants. A survey by a competent engineer disclosed that the pool of water was located about nine feet south of the south line of the five-acre tract. This being reported to appellants, they did not believe the same, and it was agreed that another survey should be made by another engineer selected by appellants, which was done. This second survey corroborated the first survey, and shortly thereafter this suit was brought for damages for misrepresentation.

The contention of appellants that this is not an action on the ground of fraud, and therefore is barred by the statute of limitations of three years, is untenable. An action for damages for deceit and false representations or for rescission based thereon is an action upon the ground of fraud. *Bradford v. Adams,* 73 Wash. 17, 131 Pac. 449; *Lyle v. Cunningham,* 79 Wash. 420, 140 Pac. 330; *Hanson v. Tompkins,* 2 Wash. 508, 27 Pac. 73; *Sears v. Stinson,* 3 Wash. 615, 29 Pac. 205; *Lawson v. Vernon,* 38 Wash. 422, 80 Pac. 559, 107 Am. St. 880; *Freeman v. Gloyd,* 43 Wash. 607, 86 Pac. 1053; *West v. Carter,* 54 Wash. 236, 103 Pac. 21; *Stevens v. Sweitzer,* 117 Wash. 420, 201 Pac. 764; *Connell v. McGill,* 124 Wash. 350, 214 Pac. 1; *Rackham v. Koch,* 125 Wash. 451, 216 Pac. 835.

The fraud or misrepresentation not having been definitely disclosed until February, 1923, and the action brought within a short time and within three years thereafter, it is not barred by the statute of limitations.

It is next contended that, even though it be an action for fraud, respondents were charged with the duty of diligence in ascertaining the deceit and fraud. 17 R. C. L. § 105, p. 741, is quoted as follows:

"Duty of Discovery of Fraud.—In proceedings for relief on account of fraud, it must appear that the complainant was in ignorance of the fraud and did not have possession of the means of detecting the fraudulent arrangement. The fact that the complainant was ignorant of the fraud until after the right to recovery was barred is not per se sufficient to entitle him to the benefit of this exception, in the absence of any act or conduct on the part of his adversary calculated to mislead, deceive, or lull inquiry. The presumption is that if a party affected by any fraudulent transaction or management might, with ordinary care or attention, have seasonably detected it, he seasonably had actual knowledge of it. Full possession of the means of detecting fraud is deemed the equivalent of actual knowledge."

There can be no question but that appellants themselves honestly believed that the source of the water supply was upon their land which they sold to respondents. The five-acre tract had been bought for the purpose of acquiring the ownership and control of the water supply. Appellants had owned the land six years and had occupied it themselves four years, and had never discovered that the water supply was not actually upon the land they owned and that it was not actually a spring or springs. Evidently they honestly believed that they owned the water and that it consisted of a spring or springs. They had no reason to believe the contrary during all the six years they owned the land and the four years they occupied it.

How then can it be said that respondents, who owned the land less than three years, were put upon their inquiry from the time they bought the land that the land did not comprise the spring or springs, or that the water supply did not consist of a spring or springs? But there is no doubt that the appellants were honest in their representations that they owned the springs, that the springs were on their land, and that the water supply consisted of spring water. The substance of the representations was that the water supply was part of the land sold, and had no element of assurance of superior quality of water other than that it was supposed to be from springs.

This, however, does not relieve them of the responsibility entirely. It makes no difference whether the representations were made through mistake or with full knowledge of the facts. Even though such representations were made through honest mistake they constitute fraud in law. *Stevens v. Sweitzer; Bradford v. Adams;* and *Rackham v. Koch, supra.* Respondents cannot be held guilty of lack of diligence in discovering the truth.

The question then remains whether respondents were in any manner damaged by the misrepresentations.

Appellants concede that the spring or springs are not situated on the land they sold, the evidence so disclosing without contradiction. But appellants contend that the evidence also discloses, without contradiction, which is true, that the stream of water, flowing down a well defined channel with banks on both sides, has its source, in part at least, on lands contiguous to the lands purchased by respondents. This creek, having a continuous flow, flows down a ravine, enters the land of respondents on the east, is conducted into a tank situated on their lands, and is then piped to the house

and outbuildings. Nine feet from the pool where the water was collected and diverted into the small trough, the creek enters the five-acre strip sold to respondents. It then runs mostly within the land of respondents, but occasionally meanders just outside of the boundary line and then re-enters respondents' land, and finally its course is wholly within the lands of respondents until it meanders outside of the west forty. From the trough where it is collected it is allowed to flow through the bed of the stream until a point is reached just inside of the south boundary line of the five-acre tract, where it is diverted into another small trough conveying the water to a tank 4 feet by 8 feet by 4 feet, which is the reservoir for a pipe line running entirely through the lands sold to respondents to the dwelling house situated across the road and some distance from the reservoir. There was evidence, which, of course, was in the nature of opinion evidence, showing the difference in value between the land with the water supply as represented on the lands of respondents, and the land without the water supply as represented, the various estimates ranging from $500 to $3,000. The trial judge awarded $2,000, which is well within the maximum. Appellant, the husband, himself admitted that the difference in value without such adequate water supply would be not to exceed $1,000. There was also evidence that the water could be collected wholly within the lands of respondents and conveyed to their buildings for from $350 to $500.

Appellants contend that respondents still have the same water and all the water that flows in the creek, and always will have it; that the supply of water is greater than if it had been from mere springs. They therefore insist that the respondents are entitled to no damages because of the fact that it developed that the

water supply was not of the nature and kind that respondents and appellants all believed it to be, namely, a spring or springs flowing into the small pool within the five-acre tract purchased in the belief that it did contain such spring. They assert that respondents have all the water, and can make any use of it for domestic purposes, that flows in the creek and through their land, and that no one can deprive them of such water, and that, as riparian owners, they can prevent the pollution of such water by adjoining owners.

But the combined representations were such as constituted inducement and respondents were entitled to rely thereon, and did. Respondents did not receive what appellants purported to sell them and did not receive what they desired to purchase, or what appellants led them to believe they were purchasing. There was thus a failure of consideration to the extent of the difference in value of what respondents actually got and what they considered they were buying. *Mauk Lumber Co. v. Miller Bros. Lumber Co.,* 126 Wash. 593, 219 Pac. 28.

However, this case is here to be tried *de novo,* upon the record made. The evidence on which the trial court based the damages was wholly opinion evidence, and while he saw and judged the credibility of the witnesses, we are confident that the probabilities outweigh the opinions.

Under all the conditions shown, we are satisfied that the evidence justifies no more than damages in the sum of $1,000, it being clear to us that the difference in value between the sum to be paid, $12,000, and of the land without the so-called spring being on the land cannot exceed that sum.

The judgment will therefore be modified to the extent of $1,000 awarded as damages and rebated from the note and mortgage.

Appellant, having recovered a more favorable judgment, will have appeal costs.

TOLMAN, C. J., MACKINTOSH, BRIDGES, and MITCHELL, JJ., concur.