## Jellico Grocery Co. v. Sun Indemnity Co. of New York

(Decided Feb. 22, 1938.)

TYE, SILER, GILLIS & SILER for appellant.

STEPHENS & STEELY and GREEN, WEBB, BASS & McCAMPBELL for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Affirming.

The Jellico Grocery Company appeals from a judgment of the Whitley circuit court where the court directed the jury to find for appellee.

The Jellico Grocery Company is a corporation engaged in the wholesale grocery business in Kentucky and Tennessee. Its home office is situated at Williamsburg, Whitley county, Ky., at which place it operates a store. Its main store is situated in Jellico, Tenn., where its principal records were kept and where its managers of branch stores reported. It operated for years a branch store at Oneida, Scott county, Tenn. At that store the general manager was Robert W. Easley. He was manager for the company from about 1918 until his death on March 22, 1936. On August 1, 1928, appellee, Sun Indemnity Company of New York, a corporation, issued to appellant an insurance policy of indemnity by the terms of which appellant was indemnified against loss, which it might sustain through the fraud, dishonesty, forgery, theft, embezzlement, and wrongful abstraction of any of its employees. Robert W. Easley, the manager of the branch store at Oneida, Tenn., was included as one of its employees and the indemnity insurance covered him to the amount of $1,000.

There is no claim or allegation in appellant's petition that Easley was guilty of forgery, theft, embezzle-

ment, or wrongful abstraction of any funds or property while in appellant's employ, but it is alleged that a loss resulted to it on account of Easley violating an agreement that he made with the company after the policy was issued, which was that he would not extend credit to M. I. Thompson or to the M. I. Thompson Coal Company, both of whom were alleged to be insolvent. It is further alleged that in violation of that agreement and against appellant's direction, Easley wrongfully extended credit to both M. I. Thompson and the M. I. Thompson Coal Company, and fraudulently and dishonestly concealed the fact from appellant and deceitfully made and caused to be made to it reports of the transactions of the store by omitting from his reports that credit had been extended to M. I. Thompson and the M. I. Thompson Coal Company. It is alleged that the extension of the credit given resulted in great loss to it which was far in excess after the loss was ascertained of the sum of $1,000, the amount of the policy. Appellee by answer admitted the execution of the indemnity policy, but denied all other material facts set out in the petition and further alleged other defenses to which attention will be called later.

The first question presenting itself to the court in the outset is, Does the evidence justify a recovery under the provisions of the indemnity policy sued on? There is no evidence that Easley profited personally in any manner by granting credit to the Thompsons, but there is positive evidence that he did not so profit. There is no evidence that Easley stole, embezzled, forged, or abstracted any property belonging to appellant under his management. The only charge made is, that he violated the directions of his employer by giving credit to M. I. Thompson and the M. I. Thompson Coal Company, and that he failed to report the credit given at the head office in Jellico, Tenn. Did the giving of the credit and failure to report constitute the fraud or dishonesty covered by the indemnity policy? The evidence does not sustain the conclusion that his acts and doings were that of a dishonest man. Neither A. T. Siler, president of the company, nor George H. Bales, bookkeeper, at Oneida, Tenn., the only witnesses who testified for appellee, state that Easley was dishonest or that he intentionally perpetrated a fraud by what he did. Easley, no doubt, after having had charge of ap-

pellant's store so long, had at heart the success and prosperity of the general business of the store. The evidence is to the effect that M. I. Thompson and the firm of the M. I. Thompson Coal Company, composed of M. I. Thompson and ———— Thompson, his son, were partners and had been customers of the Oneida store for many years. For seven or eight years of the time Easley had charge, the Thompsons had purchased for themselves and for the partnership large quantities of merchandise. Credit in large amounts had been extended to both M. I. Thompson and the coal company during that time. Goods to the amount of from $50,000 to $75,000 had been purchased at this store by the Thompsons. The credit extended to them by Easley in violation of the direction of appellant we are convinced was not actuated by any fraudulent or dishonest intent. Easley extended the credit, we think, believing in the end that the business of the Thompsons would be profitable to the business he had in charge. It is in evidence that the bookkeeper Bales, in making out the reports for the store, was directed by Easley not to include the credit given the Thompsons when he mailed the reports to the general manager at Jellico, Tenn. It is also in evidence that under Easley's direction, at least for three separate months, the credit extended to the Thompsons was not included in the reports, but it is further in evidence that Easley explained that by saying at the time, that to do so would necessitate considerable letter writing and correspondence between them. It is further in evidence that the books and ledger of the Oneida store were open and free at all times to be examined by U. S. Jones, general manager of appellant's company, and at a number of times Jones visted the Oneida store and had the opportunity and privilege of examining the books if he so desired. No attempt was made by Easley to hide the accounts or in any way falsify them upon his books. The most that can be said is that the credit given by him to the Thompsons was not authorized by his employer and was contrary to the direction of its officers. In that respect, the credit was irregular and improper, but such evidence is not sufficient to satisfy the court that it was the intent or purpose upon the part of Easley to commit a fraud or to be dishonest in his operation.

Immediately after the discovery that a loss instead

of a profit to the store would result by reason of the credit to the Thompsons, Easley, of his own accord, confessed that he had given credit to the Thompsons, contrary to the orders of the company. Appellant then instead of discharging him permitted him to remain in full charge of the business until his death. Later on, appellant extended to the Thompsons, under the advice of Easley, further credit, by the Thompsons executing to Easley as trustee for the Jellico Grocery Company, a mortgage on lumber, ties, and timber products to be manufactured by the Thompsons, for the purpose of enabling them to pay what they already owed the company, and for the purpose of further extension of credit, which credit was given. In imposing this trust upon Easley in caring for and looking after the collection of this mortgage and other business of the company, his honesty and integrity was approved by the company.

There are other facts in the record that convinces the court that the acts and doings of Easley were not prompted by any dishonest or fraudulent purpose. We are unable to reach the conclusion that Easley was guilty of fraud or that his violation of the directions of appellant in granting the credit to the Thompsons was enough to support the charge made in appellant's petition. The extension of the credit was a mistake of judgment. The indemnity bond or policy does not cover such a loss.

The same question involved here, or practically so, was involved in the case of Home Owned Stores, Inc., v. Standard Accident Insurance Company, 256 Ky. 482, 76 S. W. (2d) 273. The Home Owned Stores, Inc., instituted an action under the indemnity policy containing the same provisions as in the instant case. The company held a policy in the Standard Accident Insurance Company insuring it against fraud, dishonesty, forgery, theft, larceny, embezzlement, misappropriation, wrongful abstraction, or willful misapplication of funds by any of its employees. The facts were that it employed a clerk or manager of one of its stores and put him in charge thereof. After a few months, he was found to be short. After a check up, the shortage amounted to $504.30. The opinion of the court was in effect that the shortage was attributable to the mismanagement, carelessness, negligence, and mistakes of the manager, yet that was not such fraud or dishonesty that

was covered by the policy. In that case the court said, in substance, that the defalcations must emanate from some moral turpitude on the part of the employee; that such dishonesty or fraud will not be presumed; that the burden of proving the fraud or dishonesty was on the party charging the fraud; that it is a universal rule that the burden to sustain fraud, dishonesty, or other immoral acts against which the bond indemnified the plaintiff would not be presumed. The facts in that case were much stronger than in the instant case. Here, it is admitted that Easley was a man of excellent standing and of fair business ability; that appellant had trusted and kept him in service since the year 1918, approximately eighteen years, and until his death. The bookkeeper, George H. Bales, and A. T. Siler, president of the company, were each unwilling in their testimony to say that he was dishonest. All that they did say was that he disobeyed their direction in granting credit to the Thompsons which resulted, in the end, in a loss to the company.

Appellant for further defense, by answer, properly pleaded and relied upon the following provisions of the bond or policy:

"Upon the discovery by the Employer of any dishonest act on the part of any Employee the Employer shall, at the earliest practicable moment, and at all events not later than five days after such discovery, give written notice thereof addressed to the Surety at its home office."

The evidence is conclusive that the discovery of Easley's violation of the directions of the officers of the company when he gave credit to the Thompsons was in March, 1934. No notice was given as admitted by A. T. Siler, president of the company, until the 18th day of April, 1936, more than two years after learning of the alleged wrong or dishonesty on the part of Easley.

In the case of Home Owned Stores, Incorporated, v. Standard Accident Insurance Company, supra, the claim of appellant in that case was considered and disposed of in opposition to the contention of appellant this far: In that case no notice was given at all as provided by the policy, and for that reason we decided that no cause of action could be maintained. In the instant case a notice was given more than two years after the

discovery, but in direct violation of the plain terms of the policy so far as time was concerned. The policy provided that the notice should be given as soon as practicable and not later than five days after the discovery of the wrong. It requires little thinking to reach a just conclusion that it would be unreasonable and unfair as well as unjust to the indemnity company to defer the giving of the notice for more than two years. This provision of the policy should be construed according to the intention of the parties. The contract like any other should be given a practicable aand reasonable interpretation consistent with its language in expressing the intention of the parties. Perkins-Bowling Coal Corporation v. Maryland Casualty Company, 246 Ky. 493, 55 S. W. (2d) 378, and cases cited therein.

The notice given in the present case was equivalent to no notice at all. It is contended, however, that the delay in giving the notice was attributable to the effort on the part of the grocery company to ascertain the extent of the loss before giving the notice. Such delay cannot be justified on the contention that appellant did not have sufficient information as to the losses it had sustained. If that should be the rule, the insurer would be kept long in the dark while wrongdoings and dishonest acts of the employee were possibly going on. Its liability might be increased by leaps and bounds. The purpose of the notice to be given as soon as practicable was to give the insurer a reasonable opportunity to protect its rights. No other construction would be reasonable or fair, or would reasonably comport with the plain terms of the bond of indemnity. We are supported in this conclusion, in the main, by numerous decisions of this court as well as by courts of foreign jurisdiction. Perkins-Bowling Coal Corporation v. Maryland Casualty Company, supra; Southern Surety Company of New York v. Heyburn, 234 Ky. 739, 29 S. W. (2d) 6, and cases cited therein; American Surety Company v. Pauly, 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 977; National Bank of Asheville v. Fidelity & Casualty Company, 4 Cir., 89 F. 819; Ætna Indemnity Company v. J R. Crowe Coal & Mining Company, 8 Cir., 154 F 545, 575, 576; American Surety Company of New York v. Bankers' Savings & Loan Association of Omaha, Neb., 8 Cir., 59 F (2d) 577, and many other cases of similar import could be cited.

We see no necessity or reason in considering the

other alleged errors relied upon by appellant. It follows from the conclusions already reached that the judgment of the chancellor should be affirmed.

Judgment affirmed.