[No. 34414. *En Banc.* November 21, 1958.]

WENDELL P. BROWN, *Appellant*, v. UNDERWRITERS AT LLOYD'S, *Respondent*.[1]

[1]Reported in 332 P. (2d) 228.

*Leavy & Taber*, for appellant.

*Minnick & Hahner* and *James B. Mitchell*, for respondent.

FOSTER, J.—The appellant, a licensed real-estate broker, sued the respondent on a policy of insurance insuring him against any claim for "breach of duty as real estate agents . . . by reason of any negligent act, error, or omission," and brings the case here by appeal from a judgment for the defendant insurance carrier. The full insuring clause is set out in the margin.[2]

The policy contains many exclusionary provisions, among which is the following:

"(c) brought about or contributed to by the dishonest, fraudulent, criminal or malicious act or omission of the Assured or any employee of the Assured, . . ."

Appellant was employed by the owner to sell a building in Pasco, and, in the course of the negotiations which resulted in a sale, represented that the heating and cooling system was adequate, when, in fact, that was not so. In this respect, however, the appellant had made no independent investigation but relied upon the information supplied him by the owner.

---

[2]"Now THEREFORE this Insurance, subject to the terms and conditions hereof, indemnifies the Assured against any claim or claims for breach of duty as Insurance Brokers, Insurance Agents or General Insurance Agents which may be made against them during the period stated in the said Schedule by reason of *any negligent act*, error or omission whenever or wherever committed, or alleged to have been committed, on the part of the Assured or any person who has been, is now, or may hereafter during the subsistence of this Insurance be employed by the Assured, in the conduct of any business conducted by or on behalf of the Assured in their capacity as Insurance Brokers, Insurance Agents or General Insurance Agents." (Italics ours.)

The purchaser, upon discovering the heating and cooling system to be inadequate, sued the appellant for the damage sustained and recovered a judgment exceeding $3,000, which the appellant paid. Respondent rejected the promptly tendered defense of the action because of the exclusionary provision previously noticed.

It is abundantly clear from the findings that the only representations made by appellant to the purchaser were the statements made to him by the owner. When this was made clear by the discovery deposition of the purchaser, the tender of defense to respondent was renewed, but was again declined for the same reason as before.

In the trial of the purchaser's action against the appellant, the court instructed the jury respecting the liability for fraudulent representation as follows:

" . . . under the law a real estate agent is under a duty to exercise reasonable care and diligence to ascertain the truth or falsity of information furnished him by his principal, and such agent is responsible for such representations inducing a buyer to purchase property of his principal, if such agent knew the statements were false, or in the exercise of reasonable care and diligence on his part, should have known the statements to be false, or if he made such statements as positive assertions calculated to convey the impression to the buyer that he had actual knowledge of their truth, when in fact he had no such knowledge; . . ."

After judgment for the purchaser in the damage case, respondent declined to have any connection with an appeal for the reason previously assigned; whereupon, appellant paid the judgment and brought this action against the respondent upon its policy of malpractice insurance.

By the findings of fact herein, which we must accept as true, there was evidence that the appellant believed his statements respecting the heating and cooling system were true, and there was no evidence that the appellant knew the statements to be false. Finding No. 11 is set out in the margin.[3]

The issue is whether a misrepresentation, made by the appellant to induce the sale, which was in fact false, but believed by him to be true, is within the exclusionary clause of the policy or not. The trial court held that it was. This is wrong.

Appellant forthrightly concedes that false statements, although innocently made, are actionable. *Power v. Esarey*, 37 Wn. (2d) 407, 224 P. (2d) 323; *Pratt v. Thompson*, 133 Wash. 218, 233 Pac. 637. But, this is not to say that such statements are fraudulent.

 In an unbroken line of decisions beginning with the organization of this court, the law has been that fraud is never presumed, but must be proved by clear, cogent and convincing evidence. *Dobbin v. Pacific Coast Coal Co.*, 25 Wn. (2d) 190, 170 P. (2d) 642; *Pickle v. Lincoln County State Bank*, 61 Wash. 545, 112 Pac. 654; *Anchor Buggy Co. v. Houtchens*, 59 Wash. 697, 109 Pac. 1019.

In *Dunlap v. Seattle Nat. Bank*, 93 Wash. 568, 161 Pac. 364, it is said:

" . . . If, when all the facts and circumstances are taken together, they are consistent with an honest intent, proof of fraud is wanting."

More recently, in *Streeter v. Vaughan*, 39 Wn. (2d) 225, 235 P. (2d) 193, the court through Judge Donworth said:

"Appellant's statement that he thought that the two cows were reported 'suspect' because they had been vaccinated may have been erroneous professional advice, but there is no showing that appellant acted fraudulently in the sense that he knew that this opinion was false. Appellant expressed his professional opinion, which, in the light of subsequent tests of the cattle, was proven to be wrong. This does not constitute actionable fraud."

---

[3]"That there was evidence in the case of J. P. Tonkoff vs. Brown, et al., that Wendell P. Brown, or his agent, made certain statements with respect to the heating and cooling systems; that there was evidence in said case that Wendell P. Brown and/or his agent, believed that said statements were true; that there was no evidence in said case that Wendell P. Brown and/or his agent knew that said statements were false; that the jury in said case found that said statements were false."

■ A representation of fact believed to be true but which proves to be false is actionable, and our law as of right ought to and does afford a remedy for the damage sustained by the representee, but it is a *non sequitur* to say that such a representation is fraudulent.

This view was very well expressed by Dean Keeton of the University of Texas law school in the following paragraph:

"A representor is, of course, not dishonest if he is convinced of the existence of the facts asserted to exist. He may, however, be negligent either because he has not discovered, remembered or adverted to certain information that the ordinary man would have discovered, remembered or adverted to, or because the ordinary person possessed of the information that he had would have arrived at a different conclusion." 1 Okla. L. Rev. 21, 29 (1948).

Professor Fowler Vincent Harper of the Yale University law school in his text, A Treatise on the Law of Torts, p. 457, § 222, expressed the same view in the following paragraph:

"From what has been said, it is obvious that much of the confusion in the law of deceit arises from the failure to distinguish between three totally different sets of legal ideas and the principles of social policy from which these ideas derive. Unfortunately for the clear and expedient development of the law and for its understanding and rational exposition, courts and many writers have treated all liability for loss in particular transactions caused by language which misrepresented the facts upon which the injured person formulated his judgment, as deceit or fraud. *This practice of calling a thing 'fraud' or kindred names has resulted in stretching legal ideas to the point where their misapplication is likely to produce results completely out of line with the policy which the various legal principles are designed to promote.*" (Italics ours.)

Over a hundred years ago, the supreme court of North Carolina in *Tilghman v. West*, 43 N. C. 183, 184, declared:

". . . Fraud cannot exist, as a matter of fact, where the intent to deceive does not exist: for it is emphatically the action of the mind which gives it existence. . . ."

Michigan was one of the first states which sanctioned recovery for statements of fact honestly made but which subsequently proved to be false. Notwithstanding that history, in 1908 the supreme court of Michigan in *Aldrich v. Scribner*, 154 Mich. 23, 117 N. W. 581, said:

" . . . The law would be justly subject to reproach if it afforded no redress in such a case. In Michigan the law does give redress in such a case, and that redress may be obtained in an action for fraud. *It may seem somewhat unjust to characterize such conduct as fraudulent, but the court was apparently placed in the dilemma of either so characterizing it or of altogether denying compensation, and it chose the least objectionable of these two alternatives. . . .*" (Italics ours.)

In Webster's New International Dictionary (2d ed.) (1940), fraudulent is defined:

"Using fraud; tricky; deceitful. Characterized by, founded on, or proceeding from, fraud; of the nature of fraud. Obtained or performed by artifice."

Black's Law Dictionary (4th ed.) 788, 789, says of fraud:

"It [fraud] consists of some deceitful practice or willful device, resorted to with intent to deprive another of his right, or in some manner to do him an injury. As distinguished from negligence, it is always positive, intentional. . . ."

█ It cannot be overemphasized that we are here dealing with an exclusionary clause which excepts from coverage losses "brought about or contributed to by the dishonest, fraudulent, criminal or malicious act or omission of the Assured or any employee of the Assured, . . ."

Fraud, in this connection, must embrace dishonesty. It is said in 50 Am. Jur. 1126, § 335:

" . . . There must be something more than mere negligence or a mistake of judgment on the part of the employee; the loss must be traced to his fraud or dishonest act. But a fact question of liability for loss may be fairly raised by evidence showing that the employee had such a reckless, wilful, and wanton disregard for the interests of his employer that his acts palpably subjected the employer to likelihood of loss."

■ No presumption of knowledge arises from the mere fact that the representation was false. *Smith v. Badlam,* 112 Vt. 143, 146, 22 A (2d) 161, 162.

The supreme court of Kentucky in *Jellico Grocery Co. v. Sun Indemnity Co. of New York*, 272 Ky. 276, 114 S. W. (2d) 83, said:

"The company held a policy in the Standard Accident Insurance Company insuring it against fraud, dishonesty, forgery, theft, larceny, embezzlement, misappropriation, wrongful abstraction, or willful misapplication of funds by any of its employees. . . . the defalcations must emanate from some moral turpitude on the part of the employee; that such dishonesty or fraud will not be presumed; that the burden of proving the fraud or dishonesty was on the party charging the fraud; that it is a universal rule that the burden to sustain fraud, dishonesty, or other immoral acts against which the bond indemnified the plaintiff would not be presumed. . . ."

The United States court of appeals (C.C.A. 7th) said in *Irvin Jacobs & Co. v. F. & Deposit Co. of Maryland*, 202 F. (2d) 794, 37 A. L. R. (2d) 889 (1953):

". . . However, mere negligence, mistake, or error in judgment would not ordinarily be considered a dishonest act. Acts resulting from incompetence cannot be characterized as dishonest."

The supreme court of Indiana in *Lewark v. Carter*, 117 Ind. 206, 20 N. E. 119 (1889), said:

"Representations made for an honest purpose, and with fair reason for believing them to be true, are not fraudulent, although it may turn out that they were not true."

In Georgia, in *Worsham v. Murchison*, 66 Ga. 715, the court said:

". . . The only exception that will prevent the bar of the statute under the act of 1869 is where the representative 'has acted fraudulently and corruptly,' and these words, say this court in the case of *Lake vs. Hardee*, 57 *Ga.*, 461, 'mean more than mere illegal conduct; they mean moral turpitude and intentional fraud, to be passed upon by the jury from all the facts in the case.' 'They mean actual fraud, actual, intentional wrong-doing, willful and corrupt

dealing, a purpose to impose on his *cestui que trust*, and to benefit himself.' "

In the action of deceit, because of the rigidity of the common-law forms of action, it was necessary to prove that the speaker not only made the statements intending they should be relied upon, but that such statements were made knowing them to be false with the deliberate intention to mislead.

Sir Frederick Pollock, speaking of the common-law action of deceit (Pollock on Torts (15th ed.) 209, 214, chapter 8), declares that if a representation is made which, though false, is believed to be true, the speaker incurs no liability. *Derry v. Peek* (1889), 14 App. Cas. 337, 58 L. J. Ch. 864.

Sir John Salmond, the noted English authority on the law of torts, made that very plain:

"The wrong of deceit consists in the act of making a wilfully false statement with intent that the plaintiff shall act in reliance on it, and with the result that he does so act and suffers harm in consequence (a)." Salmond, Law of Torts (9th ed.), 607, chapter 18, § 150 (1).

Bevan states:

". . . The distinction, therefore, is between a statement not true made carelessly and a statement not true made fraudulently, of which the latter only is actionable, as negligence is not deceit." 2 Beven on Negligence 1209, 1225, book 7, chapter 1.[4]

But the common-law forms of action *never* existed in Washington, for the first territorial legislature in 1854 enacted:

"That all common law forms of action, and all distinctions between law and equity are hereby abolished, and hereafter there shall be in this territory but one form of action, to establish and enforce private rights, which shall be called a civil action." 1 Laws of Washington Territory (1st Sess., 1854) 131, § 1 [*cf.* RCW 4.04.020, Rem. Rev. Stat., § 153].

---

[4]See the review of the English law by the supreme court of Canada in *Guay v. Sun Publishing Co., Ltd.,* 2 Canada L. R. 216 (1953); but compare *Ultramares Corp. v. Touche* (Cardozo, C. J.), 255 N. Y. 170, 174 N. E. 441, 74 A. L. R. 1139.

Soon after statehood (1893), in *Hanson v. Tompkins*, 2 Wash. 508, 511, 27 Pac. 73, this court unanimously reversed a judgment because of an instruction that innocent misrepresentations, even though false, were not actionable. This has been constantly followed. *Holland Furnace Co. v. Korth*, 43 Wn. (2d) 618, 262 P. (2d) 772, 41 A. L. R. (2d) 1166.

Pollock points out that in 1893 the United States supreme court in *Lehigh Zinc & Iron Co. v. Bamford*, 150 U. S. 665, 37 L. Ed. 1215, 14 S. Ct. 219, rejected the doctrine of *Derry v. Peek, supra*, and adopted the contrary view.[5]

■ When relied upon by the purchaser to his damage, false statements made to induce a sale, although innocently made and believed by the speaker to be true, are as actionable as if known to be false and made with intent to deceive. But the gist of the action is negligence and not fraud or deceit.[6]

Recently, United States District Judge Thomas F. Mur-

---

[5] Pollock's language is:

" . . . Some years after the decision of *Derry v. Peek*, the Supreme Court of the United States said that 'a person who makes representations of material facts, assuming or intending to convey the impression that he has adequate knowledge of the existence of such facts, when he is conscious that he has no such knowledge', is answerable as if he actually knew them to be false—which is admitted everywhere—and then went on to say that a vendor or lessor may be held guilty of deceit by reason of material untrue representations 'in respect of his own business or property, the truth of which representations the vendor or lessor is bound and must be presumed to know.' . . ." Pollock on Torts 209, 215, chapter 8, § 1.

[6] Professor Charles E. Carpenter, sometime dean of the University of Oregon law school, suggests:

" . . . When a positive misrepresentation of fact is made, causing damage to another, why is not the *negligent wagging of your tongue*, or the negligent flourishing of your pen, a positive act analogous to the negligent use of your hand in driving your car and causing damage thereby? . . ." 24 Ill. L. Rev. 749, 757. (Italics ours.)

See *Weston v. Brown*, 82 N. H. 157, 131 Atl. 141; *International Products Co. v. Erie R. Co.*, 244 N. Y. 331, 155 N. E. 662, 56 A. L. R. 1377; *Sult v. Scandrett*, 119 Mont. 570, 178 P. (2d) 405; *Houston v. Thornton*, 122 N. C. 365, 29 S. E. 827, 65 Am. St. 699; *Mulroy v. Wright*, 185 Minn. 84, 240 N. W. 116; *Dickle v. Nashville Abstract Co.*, 89 Tenn. 431; 14 S. W. 896, 24 Am. St. 616; *Brown v. Sims*, 22 Ind. App. 317, 53 N. E. 779, 72 Am. St. 308.

phy, in *Dale System v. General Teleradio* (1952), 105 F. Supp. 745, 749 (So. D., N. Y.), accurately stated the situation in these words:

"(2) *Negligent Use of Words.* Since the decision of the House of Lords in Derry v. Peek, 14 A. C. 337, 58 L. J. Ch. 864, limited the action of deceit to cases where 'a false representation has been made (1) knowingly, or (2) without belief in its truth, or (3) recklessly, careless whether it be true or false,' id., per Lord Herschell, 14 A. C. 374, recovery for negligent use of words must rest on some other basis. Kountze v. Kennedy, 147 N. Y. 124, 41 N. E. 414, 29 L. R. A. 360. . . ."

The law is summarized by Dean Prosser in Prosser on Torts (2d ed.) 536, 541, chapter 18, § 88, as follows:

"A representation made with an honest belief in its truth may still be negligent, because of lack of reasonable care in ascertaining the facts, or in the manner of expression, or absence of the skill and competence required by a particular business or profession. As has been repeated above, misrepresentation frequently occurs in ordinary negligence actions for personal injuries or property damage, in the form of misleading words or acts, or nondisclosure of known facts, and the courts have not found it necessary to distinguish it in any way from any other negligence. It is only where intangible economic interests are invaded that they have become alarmed at possible liability of unknown or virtually unlimited extent, and have developed a more restricted rule. This has taken the form of limitation of the group of persons to whom the defendant may be liable, short of the foreseeability of possible harm.

"After the decision in Derry v. Peek excluded negligent misrepresentation from the action of deceit, the English courts apparently have concluded that no other action is available, and that the wrong is without any remedy, except in cases where tangible harm results from the sale of defective goods. A minority of the American courts have refused to accept Derry v. Peek, and have held that deceit will lie for negligent statements—either declaring outright that the fault is equally great and the reliance of the plaintiff equally justified, or adopting the rather obvious fiction that a duty to learn the facts or not to speak without knowing them is the full equivalent of knowledge. Several other courts, recognizing the essential basis of the liability, have carried over the negligence action itself from tangible in-

juries to economic loss, and have allowed recovery in such an action. Two conclusions seem obvious: first, that the negligence action is as appropriate to one type of damage as to the other, and second, that apart from outmoded theories of pleading no particular disadvantage can result if the remedy for negligent misrepresentation is incorporated in the action of deceit.

"Except for procedural technicalities, therefore, it is probably of little importance whether the form of the action is negligence or deceit, so long as a remedy is provided. *It is, however, clearly important, so far as the nature of the defendant's conduct is concerned, that the theory of the liability is one of negligence rather than of intent to mislead. . . .*" (Italics ours.)

▇ It is familiar law that exclusionary clauses in insurance policies are construed most strongly against the insurer. If there is room for two constructions—one favorable to the insured and the other in favor of the insurer, the former will be adopted by the court. 45 C. J. S. 906, § 834; *Selective Logging Co. v. General Cas. Co.*, 49 Wn. (2d) 347, 301 P. (2d) 535; *Sadanobu Chikusa v. American Indemnity Co.*, 43 Wn. (2d) 746, 263 P. (2d) 589; *Philadelphia Fire & Marine Ins. Co. v. Grandview*, 42 Wn. (2d) 357, 255 P. (2d) 540; *Davis v. North American Acc. Ins. Co.*, 42 Wn. (2d) 291, 254 P. (2d) 722.

The only words used in the exclusionary clause of possible application are "fraudulent . . . act." When used in this connection in insurance policies, they import acts which show a want of integrity. *Exeter Banking Co. v. Taylor*, 85 N. H. 458, 461, 160 Atl. 733. It is aptly said by United States District Judge Deady, in *Miller v. Tobin*, 18 Fed. 609, 614 (Oregon, 1883):

" . . . As what is false is not necessarily fraudulent, particularly as to the person who may use the falsehood without being aware of its falsity, the adjectives 'false' and 'fraudulent' may express different qualities of the noun 'proof,' . . ."

Or, as is said in *Commonwealth v. Gallagher*, 165 Pa. Super. 553, 69 A. (2d) 432:

" . . . The common meaning of the word 'fraudulent' is 'dishonest.' "

Misrepresentations made for an honest purpose and for a fair reason, believing them to be true, are not fraudulent, although it may turn out that they are not true. *Automobile Underwriters v. Rich*, 222 Ind. 384, 53 N. E. (2d) 775.

A misrepresentation must be either fraudulent or innocent and cannot be both. Negligence is not dishonesty; indeed, it is its direct antithesis.[7]

The textual statement of the matter in 23 Am. Jur. 761, § 11, is as follows:

"Fraud and negligence are terms indicative of different states of mind of the actor. Fraud is a malfeasance, a positive act resulting from a wilful intent to deceive; negligence is strictly nonfeasance, a wrongful act resulting from inattention, but not from design. Negligence, whatever is its grade, does not include a purpose to do a wrongful act. In some circumstances, however, one who has negligently misstated a fact is liable in damages to one who has acted upon his statement and suffered loss thereby."

▇▇ There is here a policy of insurance insuring against negligent acts but excepting liability for fraudulent acts. The record is clear that the appellant did no more than to relate that which the owner told him. Appellant believed such matters to be true and had no reason to suspect that they were false, although it turned out to be so. Appellant was careless in not making an investigation as to the truth

---

[7]"62. A misrepresentation must be either fraudulent or innocent. It cannot be both. Fraud and innocence, just as much as falsity and truth, are mutually exclusive categories. It follows, therefore, from the definition already given of a fraudulent misrepresentation, as connoting the absence of actual honest belief in its truth, that the connotation of an innocent misrepresentation is the presence of such actual honest belief; and that, in neither case, is anything more than this absence, or presence, required to constitute fraud or innocence respectively.

"63. It is well established that a misrepresentation which was founded on a belief in its truth, if that belief really existed, and was genuinely and honestly entertained, is not deprived of its character of innocence by reason of the mere fact that the belief resulted from want of care, skill, or competence, or lapse of memory, though such conduct, in other aspects, may have been of a most culpable character. Negligence is not dishonesty; indeed, it is its direct antithesis. . . ." 23 Halsbury's Laws of England (2d ed.) 45, §§ 62, 63.

of the owner's statement. The misrepresentation was, therefore, negligent and not fraudulent. Respondent insured appellant against a negligent act.

It follows that the trial court applied an erroneous rule of law, and that the judgment must be reversed with directions to enter judgment in favor of the appellant in the amount sued for. Appellant will recover costs.

HILL, C. J., FINLEY, WEAVER, OTT, and HUNTER, JJ., concur.

ROSELLINI, J. (dissenting)—By 1891 the doctrine that false statements, although innocently made, constitute fraudulent acts and are actionable, was so well engrained in our jurisprudence that this court, in *Hanson v. Tompkins*, 2 Wash. 508, 27 Pac. 73, remarked: "In fact this view of the law is so well established that we think it not necessary to comment further upon it.".

The law imputes a fraudulent intent to one who makes, as of his own knowledge, a representation of a material fact, the truth or falsity of which is not known to him.

In *Jacquot v. Farmers Straw Gas Producer Co.*, 140 Wash. 482, 249 Pac. 984, the court said:

"We have held the rule to be that if a person states as true material facts susceptible of knowledge to one who relies and acts thereon to his injury, he cannot defeat recovery by showing that he did not know his representations were false, or that he believed them to be true." [Citing cases.]

Quoting from *Grant v. Huschke*, 74 Wash. 257, 133 Pac. 447, the court further stated:

"The appellant contends that there was no evidence that he knew that his representations were false, that such knowledge is an essential element in the establishment of actionable fraud, and that, in the absence of proof of such knowledge, the admission of evidence as to his representations was error. It is usually held that representations to be actionable must be made *scienter*, but it does not follow that actual knowledge of the true facts or of the falsity of the representations must be shown. Representations, as of his own knowledge, of material and inducing facts susceptible of knowledge, made by a vendor in ignorance of the facts, but with the knowledge that the vendee is relying

upon the representations as true and under circumstances reasonably excusing the vendee from investigating for himself, are actionable on the part of a vendee so relying to his injury. In such a case, the fraud of the vendor consists in representing as true, with knowledge that it is being relied upon as true, that which he did not know to be true. This rule is supported by the trend of modern authority, and has been consistently adhered to by this court."

The doctrine has been consistently applied in the field of real estate transactions. *Marr v. Cook*, 51 Wn. (2d) 338, 318 P. (2d) 613.

The appellant's theory is that representations made without actual knowledge of their falsity but in ignorance of their truth are merely negligent and involve no deceit and that, since the policy was issued to protect him from liability for negligence, the exclusion was not intended to apply to this type of fraud. Whether the degree of deceit involved in an implicit representation that one has knowledge of certain facts is as great as that involved in a direct falsification of the known facts is a philosophical question beyond the province of this court. But I think it cannot be doubted that there is an element of deceit involved. This brings fraud based upon such misrepresentations within the import of the clause which excludes liability incurred by reason of any dishonest act or fraudulent act.

Words used in an insurance contract, as in any other contract, are to be taken in their common and ordinary meaning unless a contrary intent appears from the context or the surrounding circumstances. *Christensen v. Sterling Ins. Co.*, 46 Wn. (2d) 713, 284 P. (2d) 287. While an ambiguity in a policy should be construed in favor of the insured, there is no room for construction where the language is clear. *Lawrence v. Northwest Cas. Co.*, 50 Wn. (2d) 282, 311 P. (2d) 670. To accept the contention of the appellant would be to place a limitation on the term "fraudulent act" unwarranted in law or by the terms of the contract.

I would affirm the judgment.

MALLERY and DONWORTH, JJ., concur with ROSELLINI, J.