IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ZURIEL, INC., a Washington corporation; EDWARD D. OCHOA, Jr., | ) ) ) | No. 32935-6-III |
| Respondents, | ) ) ) | |
| v. | ) ) | |
| DAN GALBREATH and JANE DOE GALBREATH, husband and wife; DOUBLE UP RANCH, INC., a Washington Corporation; GREG GALBREATH and JANE DOE GALBREATH, husband and wife; 82 FARMS, INC., a Washington Corporation, | ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Appellants. | ) ) | |

KORSMO, J. — Respondents leased farmland to grow potatoes without being told that appellants had treated the field with an herbicide that rendered the land unsuitable for potato farming. We affirm the jury's verdict in favor of the lessees.

FACTS

Among their 6,000 acres of farm holdings, cousins Dan and Greg Galbreath and their respective corporations (collectively Galbreath) hold a 20 year lease on 480 acres belonging to the Ahern Family Revocable Trust. Since acquiring that lease in 2003, the

Galbreaths have subleased portions of the 480 acres to Edward Ochoa, his father, and their corporation (collectively Ochoa).

In 2012 the Galbreaths leased 130 acres of the Ahern property to Ochoa knowing that the Ochoas intended to raise potatoes. Dan Galbreath told Mr. Ochoa that the land would be good for potatoes. He apparently did not remember that his cousin had treated the 130 acre segment with Clopyralid when growing wheat on that field the previous year. The herbicide's producer had warned users against growing potatoes for 18 months in any field treated with Clopyralid.

The potatoes were planted but the crop soon developed visible deformities. The Washington State Department of Agriculture (WSDA) investigated and took soil samples. WSDA found significant Clopyralid contamination in all of the samples, as well as some Picloram and Triclopyr contamination in two samples. Because of the Clopyralid contamination, the entire crop was unmarketable and the WSDA embargoed it.

Ochoa filed suit against Galbreath on a theory of negligent misrepresentation based on Dan Galbreath's statement that the field was good for potatoes and his failure to disclose the herbicide application. The Galbreaths presented expert testimony that the concentration of Clopyralid was too high given the amount they had used, leading their expert to believe there must have been an additional source of contamination. At the close of the testimony, the trial court directed a verdict for the plaintiffs on the issue of liability, but instructed the jury on questions of causation and damages. The court denied

a defense request to give instructions concerning federal regulations governing

Clopyralid, Picloram and Triclopyr contamination.

The jury entered a verdict in favor of the Ochoas for $584,558.94. The Galbreaths

timely appealed to this court.

## ANALYIS

The Galbreaths present two issues in this appeal. They first contend that the trial

court erred in directing a verdict on liability. They also contend that the court erred in

denying their requested instructions. We address the two issues in the order stated.

*Directed Verdict on Liability*

Galbreath claims that the doctrine of caveat emptor applies, requiring that Ochoa

show he had actual knowledge of the contamination. We disagree.

This court reviews de novo a decision on a motion for a directed verdict. *Schmidt

v. Coogan*, 162 Wn.2d 488, 491, 173 P.3d 273 (2007). A directed verdict must be granted

where, viewing the evidence most favorably for the nonmoving party, the court can say

that there is not substantial evidence or a reasonable inference to sustain a verdict for the

nonmoving party. *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 531, 70 P.3d 126 (2003). A

party is liable in fraud where he knows his statements to be false and intends to deceive

the other party, and liable in negligence where his statements are innocently made but

without due care as to their truthfulness or accuracy. *See Brown v. Underwriters at*

3

*Lloyd's*, 53 Wn.2d 142, 145-153, 332 P.2d 228 (1958) (discussing the histories of and differences between fraud and negligent misrepresentation).

The elements of a claim of negligent misrepresentation that a plaintiff must establish are:

> (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages.

*Ross v. Kirner*, 162 Wn.2d 493, 499, 172 P.3d 701 (2007). This version of the tort requires that the defendant affirmatively made an actual misrepresentation.

A second version of the tort exists when the defendant fails to disclose material information. The failure to disclose establishes negligent misrepresentation when the party owes a duty to disclose. *Van Dinter v. Orr*, 157 Wn.2d 329, 333, 138 P.3d 608 (2006). This duty arises in several circumstances, including: (1) the existence of a fiduciary relationship, (2) disclosure is necessary to prevent an incomplete statement from being misleading, (3) the facts are within the knowledge of one party and not easily ascertained by the other, (4) one party relies on the superior specialized knowledge of the other, or (5) one party lacks business experience and the other would gain an unfair advantage by remaining silent. *Id.* at 334.

Ochoa pursued both theories of negligent misrepresentation at trial. The trial court did not identify which theory it relied on in granting the directed verdict. Since the record clearly establishes that Dan Galbreath made the false statement that the field was good for potatoes, and that statement suffices to support the directed verdict, we need only discuss the affirmative misrepresentation theory.

Initially, however, we note that the Galbreaths confuse the two theories by asserting that caveat emptor mandates that plaintiffs show actual knowledge in order to establish a claim. The authority they cite involved a claim of fraud rather than negligence. *See Burbo v. Harley C. Douglass, Inc.*, 125 Wn. App. 684, 697-698, 106 P.3d 258 (2005). They do not cite, and we have not found, any authority to support an argument that actual knowledge is necessary in a claim of affirmative misrepresentation.

The issue then was whether the Dan Galbreath statement supported the decision to direct a verdict on the question of liability. It did. Galbreath knew that Ochoa desired to lease the 130 acres in order to plant potatoes. He provided the information in order to help guide Ochoa into signing the lease. He negligently communicated the false information by not remembering or investigating his own previous use of the field the year before; if he had checked with his cousin he would have remembered that the field could not be used for potatoes that year. Ochoa relied on the information, and did so reasonably given that Galbreath himself was a veteran potato farmer who also worked that land.

The Galbreath statement satisfied the five elements that establish the liability prong of the negligent misrepresentation tort. They essentially were uncontested. The trial court understandably directed the verdict for the plaintiffs on liability and left the question of proximate cause (as well as damages, if necessary) for the jury to decide.

The trial court did not err in directing the verdict on liability in favor of Ochoa.

*Jury Instructions*

Galbreath also argues that the trial court erred in failing to give their requested instructions that federal law prohibited the sale of potatoes containing traces of the other two herbicides found in the Ochoas potato field.[1] The trial court correctly recognized that the information could only be used with respect to the defendant's intervening cause argument and was irrelevant to the liability issue. The trial court did not abuse its broad discretion in this area.

Well settled law governs our review of jury instruction issues. Jury instructions are sufficient if they correctly state the law, are not misleading, and allow the parties to argue their respective theories of the case. *State v. Dana*, 73 Wn.2d 533, 536-537, 439 P.2d 403 (1968). The trial court also is granted broad discretion in determining the wording and number of jury instructions. *Petersen v. State*, 100 Wn.2d 421, 440, 671 P.2d 230 (1983). Discretion is abused when it is exercised on untenable grounds or for

---

[1] They do not assign error to the failure to give the Clopyralid instruction.

untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

A party is entitled to have its theory of the case presented to the jury by proper

instructions if there is any evidence to support it. *DeKoning v. Williams*, 47 Wn.2d 139,

141, 286 P.2d 694 (1955). However, it is not entitled to instructions that are irrelevant to

the issues upon which the case is tried. *Poston v. W. Dairy Prods. Co.*, 179 Wash. 73, 88,

36 P.2d 65 (1934).

Here, the instructions were irrelevant to the issue of liability because Ochoa never

claimed that the presence of any of the three herbicides was the basis for the negligent

misrepresentation. Rather, it was the false statement concerning the condition of the field

that was the basis for liability. Galbreath's application of the Clopyralid was evidence

that he should have known that the land was unfit to use, but was not itself a basis for

liability. The presence of other herbicides than the one that led WSDA to embargo the

entire crop was a matter for the jury to consider when considering causation. The jury

was properly instructed on superseding cause. Clerk's Papers at 302.

The court had a very tenable basis for declining to give the instructions since they

were not useful to the jury. The evidence of the other herbicides was relevant to

Galbreath's causation defense and was properly argued to the jury in conjunction with the

superseding cause instruction. There was no need for the additional instructions.

The judgment is affirmed.

7

No. 32935-6-III
*Zuriel v. Galbreath*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, A.C.J.

8