Estado Libre Asociado de Puerto Rico, demandante y recurrente, *v.* Great American Insurance Company, demandada y recurrida.

*Número:* R-77-473    *Resuelto:* 9 de marzo de 1978

826

*Héctor A. Colón Cruz, Procurador General,* y *Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados del recurrente; *Calderón, Rosa-Silva & Vargas* y *Carlos M. Miranda Rodríguez,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

A tenor de los Arts. 68–71 de la Ley Municipal (21 L.P.R.A. secs. 1456–59) el Secretario de Hacienda contrató con la recurrida Great American Insurance Company la prestación de fianzas generales para responder a los municipios por desfalcos o malversación de fondos por sus empleados. En diciembre de 1969 los auditores de la oficina del Contralor iniciaron un examen de las operaciones fiscales del Municipio de Carolina en el curso del cual encontraron que el Jefe de Presupuesto y Personal Brenes Serrano había falsificado nóminas[1] a nombre de cinco personas que no habían rendido servicio al Municipio y se había apropiado ilegalmente del importe de $11,849.11. En consecuencia el 20 de mayo de 1971 el Alcalde decretó la cesantía de Brenes Serrano. Entre el 2 y 7 de junio de 1971, las personas a favor de quienes se habían expedido los cheques en pago de nóminas ficticias, declararon bajo juramento no haber cobrado los mismos, ni haber prestado servicio alguno al Municipio. Un mes después, el 8 de julio de 1971, el Contralor rindió su informe que fue notificado el mismo día al Secretario de Hacienda. Este funcionario presentó la prueba de pérdida (*proof of loss*) a la fiadora Great American el 3 de enero de 1972, dentro de los seis meses siguientes al Informe del Contralor. Negóse la fiadora a indemnizar la pérdida y el E.L.A. y Municipio de Carolina radicaron la demanda en cobro el 18 de junio de 1974.

Los hechos fueron estipulados y en 13 de octubre de 1977, la Sala de San Juan del Tribunal Superior dictó sentencia condenando a Great American a pagar la suma distraída, expresándose así:

"Según la ley y las cláusulas del documento de fianza, ¿presentó el Secretario de Hacienda en tiempo la reclamación ('proof of loss') ante la fiadora y la demanda para este caso? La contes-

---

[1] Los períodos de falso servicio están comprendidos entre 12 diciembre 1969 y 14 mayo 1971 lo que demuestra que la falsificación de nóminas no se detuvo con el inicio de la intervención del Contralor.

tación es en la afirmativa y a continuación nos explicamos: la reclamación o declaración de pérdida fue presentada ante la Great American el 3 de enero de 1972, esto es, unos cinco días antes de que transcurrieran seis meses desde que el Departamento de Hacienda—el Secretario de Hacienda—tuvo conocimiento de la pérdida. Dicha reclamación fue rechazada por la Great American y la demanda se radicó el 18 de junio de 1974, esto es, antes de que hubieran transcurrido tres años desde que el Secretario de Hacienda conoció oficialmente de la pérdida acaecida en el Municipio." Pág. 3, *ibid.*

Luego el tribunal reconsideró y en 14 noviembre, 1977, dictó la sentencia que ahora revisamos, resolviendo que el término de tres años acordado en la fianza para iniciar acción judicial es uno de caducidad([2]) y que habiéndolo excedido la parte demandante, procede la desestimación.

La cuestión única en este pleito es la determinación del evento a partir del cual deben computarse tanto el término de 6 meses para presentar el *proof of loss* como el de 3 años para promover la acción civil, y para adjudicarla hay que interpretar las siguientes cláusulas pertinentes del contrato de fianza redactado en inglés. En lo que concierne al caso, dispone la cláusula 6:

"Within a reasonable time after discovery of any evidence or circumstances indicating a loss, the obligee [the Municipalities of Puerto Rico] shall promptly notify the General Agent of the Surety [Great American] by mail, giving all facts and details then known to the obligee. Within six (6) months after discovery as aforesaid, of any default hereunder, the obligee shall file at the office of the authorized General Agent of the Surety affirmative itemized proof of loss certified as correct by the Secretary of the Treasury or the Agent that he may designate . . . . It is agreed that the Secretary of the Treasury of Puerto Rico or the Agent that he may designate shall establish all claims relative to investigations made by the Agents of his Department or the Office of the Comptroller of Puerto Rico or any other Government Agency.

---

([2]) *Jiménez y Salellas, Inc.* v. *Maryland Cas. Co.*, 92 D.P.R. 207 (1965); *Caribe Lumber* v. *Inter-Am. Builders*, 101 D.P.R. 458 (1973).

Any claim hereunder must be reported to the General Agent of the Surety within three (3) years after the termination of the bond as to the Principals [empleados y funcionarios municipales] causing the loss and no suit shall be maintained hereunder unless brought within three (3) years after discovery of such loss."

Una notificación por el Municipio de Carolina a la fiadora en o después del 20 de mayo de 1971, en que se denunció el desfalco tiene una utilidad limitada para la compañía fiadora, que por los propios términos de la cláusula 6 no acepta como prueba de pérdida aquella que no venga certificada como correcta por el Secretario de Hacienda o su agente designado.

Cuando los contratantes pactan sobre una materia regulada por ley, las disposiciones estatutarias se entienden incorporadas desde un principio al contrato, y no podrán las partes evadir([3]) tal reserva del poder soberano del Estado para proteger los intereses vitales de sus habitantes. *Central San Vicente* v. *Junta Azucarera,* 78 D.P.R. 799, 806-7 (1955). En protección del interés público la Asamblea Legislativa dispuso que deberán prestar fianza los funcionarios y empleados municipales que por reglamento determine el Secretario de Hacienda, en el cual también se fijará el monto de cada fianza y los riesgos a cubrirse. Art. 68, Ley Municipal que es la Núm. 142 de 21 de julio de 1960 (21 L.P.R.A. sec. 1456); y ordenó que "[e]l Secretario de Hacienda actuará en

---

([3]) "[E]l Estado retiene autoridad sobre los contratos para proteger los intereses vitales de sus habitantes y la regla es que todos los contratos están subordinados a esta autoridad suprema que incluye no solamente la protección de la salud, la moral y la seguridad del pueblo sino que es igualmente extensiva a sus necesidades económicas. *Chicago B. & Q. R. Co.* v. *State of Nebraska,* 170 U.S. 57; *Veix* v. *Sixth Ward Assn.,* 310 U.S. 32, y la regla es que los contratos relacionados con un negocio reglamentado por el Estado—como lo es la industria azucarera en Puerto Rico—están sujetos al posible ejercicio de este poder soberano. *Erie R.R. Co.* v. *Board of Public Util. Commrs.,* 254 U.S. 394; *Rast* v. *Van Deman & Lewis Co.,* 240 U.S. 342. La reserva de los atributos esenciales del poder soberano debe leerse en los contratos de esta naturaleza. *Home Bldg. & Loan Assn.* v. *Blaisdell,* 290 U.S. 398." *Central San Vicente* v. *Junta Azucarera,* supra.

representación de todos los municipios en todos los aspectos relacionados con la contratación de la fianza, así como en la tramitación de reclamaciones que surgieren bajo los términos de la póliza, en la forma que estimare más conveniente y ventajosa a los intereses de los municipios." Art. 70, Ley Municipal (21 L.P.R.A. sec. 1458). La cláusula 6ª de la fianza(⁴) no puede leerse de otro modo que no sea reconociendo al Secretario de Hacienda como única persona facultada para promover la tramitación de reclamaciones *en todos sus aspectos.* (⁵) Por los términos del citado Art. 70 de la Ley Municipal, el municipio asegurado carece de todo poder o capacidad legal para intervenir en la contratación de la fianza o en la reclamación por pérdidas cubiertas por la fianza, investido de dicha facultad única y exclusivamente el Secretario de Hacienda. No puede, por tanto, interpretarse como obligación del Municipio la de notificar la pérdida tan pronto ésta se descubra. La obligación es del Secretario de Hacienda, pero éste no está en posición de notificar y certificar la pérdida hasta ser informado de la misma, por lo que el término de 6 meses provisto en la póliza a tales fines no se cuenta en el presente caso desde el 20 de mayo de 1971, en que el Alcalde advino en tal conocimiento, sino a partir del 8 de julio de 1971, en que el Secretario de Hacienda se enteró del desfalco por el Informe del Contralor rendídole en esa fecha. Los pactos y condiciones

---

(⁴) Dice la parte de esta cláusula que aspira a recitar el estatuto: "It is agreed that the Secretary of the Treasury of Puerto Rico or the Agent that he may designate shall establish all claims relative to investigations made by the Agents of his Department or the Office of the Comptroller of Puerto Rico or any other Government Agency."

(⁵) Art. 1.050 Código de Seguros (26 L.P.R.A. sec. 105)

" 'Contratar o tramitar', con relación a seguros, incluye cualquier de los siguientes actos:

(1) Solicitación y persuasión.

(2) Negociaciones anteriores al otorgamiento.

(3) Otorgamiento de un contrato de seguro.

(4) Asegurar o reasegurar.

(5) Tramitación de asuntos subsiguientes al otorgamiento de un contrato y que surjan del mismo."

de la póliza no pueden conceder al Municipio atribuciones que le niega la ley, ni mucho menos imponerle exigencias de notificación y descubrimiento que son de la competencia exclusiva del Secretario de Hacienda. (⁶) No hay descubrimiento de pérdida, a los fines de la cláusula 6, hasta que la misma llega a conocimiento del Secretario de Hacienda. La exigencia de aviso de descubrimiento por el Municipio es inoficiosa e ineficaz por contravenir la ley. Según el esquema legislativo que regula esta fianza, el Municipio está a tal extremo apartado de la contratación y reclamación que hasta las primas se pagan por el Secretario de Hacienda (21 L.P.R.A. sec. 1459).

■ El descubrimiento del desfalco o pérdida es concepto que evade la definición concreta en sus primeras etapas, toda vez que la "evidencia o circunstancias indicativas de la pérdida" (⁷) no pueden darse con igual claridad, prontitud y confiabilidad en todos los casos. Forzoso es remitirnos a un documento de referencia o a un momento fijo en el tiempo y en la concreción de la prueba en que estén revelados a plenitud los hechos que constituyen la pérdida. (⁸) Ese momento llega al rendirse el informe por el funcionario investigador, que en el caso de autos fue el Contralor, notificado al Secre-

---

(⁶) Art. 1207, Código Civil (31 L.P.R.A. sec. 3372)

"Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público."

Art. 4, Código Civil (31 L.P.R.A. sec. 4)

"Son nulos los actos ejecutados contra lo dispuesto en la ley, salvo los casos en que la misma ley ordene su validez.

"Los derechos concedidos por las leyes son renunciables, a no ser esta renuncia contra la ley, el interés o el orden público, o en perjuicio de tercero."

(⁷) "Within a reasonable time after discovery of any evidence or circumstances indicating a loss, the obligee [the Municipalities of Puerto Rico] shall promptly notify the General Agent of the Surety [Great American] . . . ."

(⁸) El documento es una fuente de información más confiable, completa y exacta en cuanto a su contenido y alcance que la descripción que cualquiera pueda hacer. *Gordon* v. *United States*, 344 U.S. 414 (1953), 97 L.Ed. 447.

tario de Hacienda el 8 de julio de 1971, y esta fecha debe ser el punto de partida del término de seis (6) meses para radicar la prueba de pérdida (*proof of loss*) con la fiadora, plazo guardado en el caso que nos ocupa. No es, como aduce la compañía recurrida en el argumento que le ganó la reconsideración de una primera sentencia correcta de la sala de instancia, que la decisión dependa de a quién hemos de dar título de "descubridor", si al primer investigador o examinador de cuentas que se tropieza con aspectos sospechosos en la contabilidad municipal, en la temprana etapa de su pesquisa incipiente, fragmentaria e incompleta, o al funcionario que suscribe el informe ya completada la investigación, conteniendo *todos* los hechos sobre los cuales pueda descansar la determinación fáctica de la pérdida. *Cf. Caribe Lumber* v. *Inter Am. Builders*, 101 D.P.R. 458 (1973). El lado débil del argumento de la recurrida es la subjetivación o personalización del concepto "descubrimiento" que como antes hemos indicado es un *proceso* que debe llegar a su madurez o suficiencia, y no el *acto* de una persona en particular. Sobre este principio del descubrimiento con naturaleza de proceso investigativo culminante en determinación, descansa el Art. 74-A del Código Político al ordenar:

"Cuando una agencia *determine* que cualquiera de sus funcionarios o empleados está al descubierto en sus cuentas, no ha rendido cuenta cabal, o ha dispuesto de fondos o bienes públicos para fines no autorizados por ley, o que cualquiera de sus funcionarios o empleados o persona particular sin autorización legal ha usado, destruido, dispuesto, o se ha beneficiado de fondos o bienes públicos bajo el dominio, control o custodia de la agencia, deberá notificarlo prontamente al Secretario de Justicia y al Contralor de Puerto Rico para la acción que corresponda. Dicha notificación se hará aunque los fondos o bienes hayan sido, sean o puedan ser restituidos. A los fines de esta sección la palabra 'agencia' significa los departamentos, agencias e instrumentalidades del Estado Libre Asociado de Puerto Rico, incluyendo sus subsidiarias, y los municipios." (3 L.P.R.A. sec. 82a.) (Bastardillas nuestras.)

■ Nótese la diferencia entre la "determinación" que exige el Código Político y la de "cualquier evidencia o circunstancias que indiquen [o sugieran] una pérdida" en el lenguaje de la cláusula 6. Los términos de caducidad, por su irremisible efecto extintivo de derechos, no pueden depender de vaguedades y eventos inciertos. En el caso de autos la notificación de pérdida no puede estar predicada en simple sospecha o "cualquier evidencia o circunstancia", sino en una determinación confiable de que la pérdida ha ocurrido.

Con estos antecedentes y fundamentos, y a tenor de la Regla 50 del Reglamento de este Tribunal, *se expide el auto, se revoca la sentencia en reconsideración dictada el 14 de noviembre de 1977 por el Tribunal Superior, Sala de San Juan, y en su lugar se restituye en toda fuerza y vigor la sentencia original de 13 de octubre de 1977.*

El Juez Asociado Señor Rigau no intervino. El Juez Asociado Señor Martín emitió opinión disidente.

—O—

Opinión disidente del Juez Asociado Señor Martín.

San Juan, Puerto Rico, a 9 de marzo de 1978

Disiento. El Tribunal considera inoficiosa e ineficaz la disposición del contrato de fianza suscrito entre la compañía fiadora y los municipios de Puerto Rico que cubre a los funcionarios municipales y la cual exige de los municipios que cursen pronto aviso por correo certificado al agente general de la fiadora "dentro de un tiempo razonable después del descubrimiento de cualquier evidencia o circunstancias que sean indicativas de una pérdida . . . ofreciendo todos los hechos y detalles entonces conocidos por el [municipio] beneficiario." El razonamiento del Tribunal se apoya en la existencia de un esquema legislativo que confiere poder exclusivo al Secretario de Hacienda, con exclusión de los municipios, para determinar cuales habrán de ser los funcionarios y empleados municipales que deberán prestar fianza, la cuantía de ésta y los

riesgos a cubrirse, para representar a los municipios en todos los aspectos relacionados con la contratación de la fianza, así como en la tramitación de reclamaciones que surgieren bajo los términos de la póliza, en la forma que estimare más conveniente y ventajosa a los intereses de los municipios; y el pago de las primas por tales fianzas.

El poder que confiere la ley al Secretario de Hacienda para representar a los municipios en todos los aspectos relacionados con la contratación de la fianza, así como en la tramitación de reclamaciones que surgieren bajo los términos de la póliza, no excluye ni prohíbe el que la compañía requiera al beneficiario de la póliza, que es el municipio, a notificar prontamente "cualquier evidencia o circunstancias indicativas de una pérdida" y a "ofrecer todos los hechos y detalles entonces conocidos por el beneficiario."

Si el Secretario de Hacienda entiende que como agente que es de los municipios en la tramitación de reclamaciones que surgieren bajo los términos de la póliza, él debe asumir la obligación de hacer la notificación requerida por la póliza, no debe rehuir esa obligación amparándose en el tecnicismo de que la póliza requiere que sea el municipio y no el Secretario. Tal interpretación va contra el propósito fundamental del requisito contractual de notificación que no es otro que poner a la fiadora en conocimiento de que el municipio ha venido en conocimiento de evidencia o circunstancias que son indicativas de una pérdida. Si el Secretario de Hacienda entiende que es su obligación y no la del municipio el enviar el aviso de pérdida debe reglamentar ese aspecto a los fines de que el municipio lo entere de cualquier irregularidad.

De no fijar esa responsabilidad en el municipio podría darse el caso que las pérdidas pudieren ser encubiertas por razones de índole diversa en perjuicio de la compañía fiadora a quien se podría mantener ignorante de la situación por términos indefinidos.

La importancia de la pronta notificación de la situación señalada a la compañía fiadora ha sido reconocida en varias jurisdicciones. Se ha sostenido, por ejemplo, que el propósito de dar el aviso de pérdida a la fiadora es para concederle una oportunidad razonable para proteger sus derechos, y una demora luego de haber transcurrido un tiempo específico no queda justificada por el hecho de que el patrono no haya averiguado el alcance de la pérdida. Véase *Brown v. Maryland Casualty Co.*, 11 A.2d 222, 224 (Vt. 1940). Y, la falta de información detallada sobre pérdidas sufridas al haber desfalcado un empleado no justifica una demora en avisar al fiador. Véase *American Surety Co. v. Bankers Savings & Loan Ass'n.*, 59 F.2d 577, 579 (C.C.A. Neb. 1932). Asimismo, una demora de 2 años no puede justificarse por razón de que el asegurado no tenía suficiente información con respecto a las pérdidas sufridas, pues el propósito del aviso es el dar al asegurado una oportunidad razonable de proteger sus derechos. Véase *Jellico Grocery Co. v. Sun Indemnity Co. of New York*, 114 S.W.2d 83, 86 (Ky. 1938).

También está resuelto que como norma general son válidas las cláusulas contenidas en una fianza de fidelidad que requieren del beneficiario que informe las pérdidas dentro de un tiempo específico después de ser las mismas descubiertas. Véase Couch, *On Insurance 2d*, sec. 49:213. Por vía de excepción se consideran inválidas las disposiciones que requieran un período de notificación menor que el señalado por estatuto. *Id.* sec. 49:214.

Las conclusiones de hecho del tribunal de instancia en este caso revelan que para el 20 de mayo de 1971 el empleado del Municipio de Carolina que dio motivo a este pleito había confiado al Alcalde ser el responsable de un desfalco y que en esa misma fecha el Alcalde *decretó la cesantía del empleado en cuestión*. También concluye el tribunal recurrido que al 20 de mayo de 1971 los investigadores de la Oficina del Contralor habían descubierto la pérdida y tenían a su disposición

la evidencia para establecerla. No fue hasta el 3 de enero de 1972, pasados seis meses de haberse descubierto la pérdida, que el Secretario de Hacienda dio aviso por primera vez a la compañía fiadora mediante la presentación de la Prueba de Pérdida (*Proof of Loss*), y la demanda que dio inicio al pleito se instó el 18 de junio de 1974, habiendo transcurrido más de tres años desde que se descubrió la pérdida.

En otras palabras para el 20 de mayo de 1971 existía mucho más que "evidencia o circunstancias" indicativas de una pérdida. Ya el Contralor tenía la evidencia para establecerla. Ya el empleado culpable de la pérdida había confesado. Ya el Alcalde había tomado las medidas correctivas y lo había despedido de su empleo. ¿Qué información adicional era necesaria para enterar a la compañía fiadora de la pérdida? La opinión de este Tribunal expresa que esas circunstancias no son suficientes para que hubiere habido un *descubrimiento de pérdida* que justificara el aviso a la fiadora pues el Secretario de Hacienda no tenía conocimiento de ella. El punto de partida para que empezara a correr el término de seis (6) meses para radicar la prueba de pérdida (*proof of loss*) con la fiadora, expresa la opinión de este Tribunal, lo es el 8 de julio de 1971, fecha en que el Contralor notificó al Secretario de Hacienda con copia del informe del investigador de la Oficina del Contralor.

El contrato de fianza es, a mi entender, claro y preciso. Su cláusula 6 requiere dos avisos a la compañía fiadora. El primero, de carácter general, debe cursarse dentro de un tiempo razonable después del descubrimiento de cualquier evidencia o circunstancias indicativas de una pérdida. El contrato impone esa obligación al Municipio (*obligee*). Esta instrumentalidad, que tiene personalidad jurídica (21 L.P.R.A. sec. 1102), y que lógicamente es la agencia que tiene conocimiento inmediato y directo de las actuaciones de sus empleados, es la que está en mejor posición para informar a la fiadora tan pronto se descubre la pérdida bajo el contrato de

fianza. El contrato no exige que el Secretario de Hacienda corrobore ningún hecho en esta etapa. El segundo aviso denominado "Prueba de Pérdida" (*Proof of Loss*), debe enviarse dentro de los seis (6) meses siguientes al descubrimiento de la pérdida, debidamente certificado por el Secretario de Hacienda. La intervención del Secretario en esta segunda etapa la exige la ley y el contrato, ya que tratándose de una reclamación, es dicho funcionario quien tiene la facultad exclusiva de hacerla.

Si este Tribunal entiende que el municipio, por virtud de ley, queda sustituido en el contrato por el Secretario de Hacienda a todos los efectos debió haber reconocido que este funcionario debió haber cursado, en sustitución del municipio, el primer aviso de pérdida dentro del término razonable que exige el contrato. El contrato de fianza designa al municipio como beneficiario (*obligee*), y como cuestión de hecho y de derecho es el beneficiario. Pero, el Secretario de Hacienda, por ley, es quien efectúa todas las gestiones en torno al mismo desde su contratación hasta la reclamación de las pérdidas. ¿Por qué entonces no debe imponerse al Secretario de Hacienda la obligación que la póliza exige del municipio con respecto al envío del aviso de pérdida dentro de tiempo razonable de ser descubierta, en lugar de relevar de dicha obligación tanto al municipio como al Secretario, en perjuicio de la compañía fiadora? No puedo seguir la lógica del argumento. La compañía fiadora tiene el derecho a que se le notifique tan pronto haya evidencia o circunstancias que indiquen una pérdida. En algún otro caso la evidencia o circunstancias podrían ser vagas o imprecisas.[1] Pero en éste son tan evidentes y gozan de tal certeza que no debe haber duda alguna

---

[1] No se requiere notificación de meras sospechas de conducta deshonesta de un empleado, Couch, *loc. cit.*, sec. 49:233; Appleman, *Insurance Law and Practice*, sec. 6197. Tampoco se requiere al descubrirse una merma si no hay razón para creer que se deba a actos deshonestos. Couch, *loc. cit.*, sec. 49:232.

de que la pérdida había sido descubierta para el 20 de mayo de 1971.

Confirmaría la sentencia del tribunal de instancia que declaró sin lugar la demanda por haber transcurrido en exceso el término de seis (6) meses luego del descubrimiento de la pérdida para la presentación de la prueba de pérdida (*proof of loss*), y el término de tres (3) años desde el descubrimiento de la pérdida hasta la radicación de la demanda.